Filed 11/17/20  P. v. Grundy CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM GRUNDY,<br><br>    Defendant and Appellant. | B303346<br><br>(Los Angeles County<br>Super. Ct. No. A615700) |

APPEAL from an order of the Superior Court of Los Angeles County, Tammy C. Ryu, Judge.  Reversed and remanded with directions.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant William Grundy was convicted of felony murder. Almost forty years later, he filed a petition for resentencing under newly-enacted Penal Code section 1170.95.[1] The trial court appointed counsel for defendant and set the matter for a hearing, then denied the petition on the basis that defendant had not made a prima facie showing of entitlement to relief. Defendant appeals. On appeal, the Attorney General concedes that defendant established a prima facie case. We accept the concession and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Crime[2]

On February 15, 1979, defendant and a 17-year-old referred to as Kevin D. went to the victim's house after discussing "making some money."[3] Kevin kicked the back door open and the victim, Robert Kadous, was standing inside. Kevin demanded money and Kadous handed defendant a wallet containing money, which defendant removed.

Defendant "took a brass chime rod from a wall and said, 'Man, we are going to have to – we are going to have to take him

---

[1] All undesignated statutory references are to the Penal Code.

[2] As we shall discuss, defendant's conviction resulted in two appellate opinions, which are largely identical for our purposes. We take our discussion of the facts from the second opinion, which was part of the trial court record as an exhibit. (*People v. Grundy*, case No. 2 Crim. 36905, Mar. 20, 1982.)

[3] Defendant's age is not mentioned in the appellate opinion. The probation report states he was 18 years old at the time of the offense.

out the game so he won't say nothing.' " Defendant struck Kadous on the head, behind the ear, with the chime. Defendant fled. Kadous walked from his house, to a neighbor. At the neighbor's house, Kadous complained that two men had come to his house and had beaten him. His face was redder than usual. After speaking, Kadous turned, slumped to the ground, let out a long breath, and was still. By the time the police arrived, he was dead.

The autopsy "disclosed that the victim's heart was enlarged and there were several areas of scarring which indicated he had had previous heart attacks. The coronary arteries were generally in very poor condition. The cause of death was a heart attack." The prosecution offered the testimony of a cardiac specialist that "the heart attack suffered by the victim was due to the stress which he had just suffered in the encounter with [defendant]." The deputy coroner did not agree as to the exact mechanism of the heart attack, but nonetheless opined that "the incident in which the victim had been involved did produce physiological reactions which accounted for the sudden collapse and death of the victim." The defense offered the testimony of two other physicians who disagreed with these conclusions.

## 2. *Trial and Appeals*

Defendant was charged by information with murder (§ 187), with the special circumstances of robbery-murder and burglary-murder. Defendant was also charged with burglary (§ 459) and robbery (§ 211). The latter charge was later reduced to attempted robbery. In connection with the burglary and attempted robbery, it was alleged that defendant inflicted great bodily injury on the victim (§ 12022.7) and the victim was over the age of 60 (§ 1203.09).

3

Defendant waived jury and the matter proceeded by bench trial. The trial court found defendant guilty as charged. The prosecution had not sought the death penalty, so defendant was sentenced to life in prison without the possibility of parole (LWOP). Terms for burglary and robbery were imposed and stayed pending completion of the LWOP sentence.

Defendant appealed. Division Four of the Second Appellate District initially affirmed his conviction, in an opinion dated January 21, 1981. On appeal, defendant had argued "there was insufficient evidence to show that the cause of death of the victim, Mr. Kadous, was related to the burglary and robbery of which [defendant] was convicted." The court disagreed, finding substantial evidence "to permit the trial court, in its discretion, to determine that the death of the victim was causally related to the offenses perpetrated by [defendant] and his companion." Defendant had also argued that the LWOP sentence constituted cruel and unusual punishment, and noted that the trial court had stated it would have exercised its discretion to impose a lesser sentence, if it had the power to do so. The court concluded the LWOP sentence did not constitute cruel and unusual punishment. Defendant petitioned for Supreme Court review.

Thereafter, the California Supreme Court concluded that trial courts possess the power to strike special circumstances (*People v. Williams* (1981) 30 Cal.3d 470, superseded by statute in § 1385.1). The Supreme Court retransferred the case to the Court of Appeal for reconsideration in light of *Williams*. The Court of Appeal issued its second opinion on March 25, 1982. It restated, almost word-for-word, its original opinion with respect to the facts and the causation issue. Turning to defendant's cruel and unusual punishment argument, the court declined to reach

4

it. Given that the trial court had indicated an intention to exercise discretion to not sentence defendant to LWOP if such discretion existed, and the *Williams* opinion holding that there was such discretion, the court remanded to allow the court to exercise its discretion.

On remand, the trial court reduced defendant's LWOP sentence to a term of 25 years to life.

### 3. *Section 1170.95 Petition*

On March 25, 2019, defendant, representing himself, filed a form petition for resentencing under section 1170.95. He checked all the relevant boxes entitling him to relief, and requested appointment of counsel. While the record on appeal does not include any initial order on the petition, it appears that the court appointed counsel for defendant, permitted briefing, and scheduled a hearing.

On July 3, 2019, the prosecution filed an opposition to the petition. The bulk of the opposition was directed to the argument, not pursued on appeal, that section 1170.95 is unconstitutional. The prosecution also argued, by relying on the facts as set forth in the second appellate opinion, that defendant was not entitled to relief, on the basis that (1) he was the actual killer and (2) he had intent to kill.

On September 17, 2019, the public defender filed a reply on defendant's behalf. The argument was solely directed to the constitutionality of section 1170.95, and did not otherwise attempt to argue an entitlement to relief.[4]

---

[4] There is no suggestion on appeal that the failure to respond to the prosecution's factual argument constituted a waiver.

5

The court held a hearing on October 18, 2019.[5] At the hearing, the 1170.95 court concluded defendant was not eligible for relief. The court first suggested that defendant was the actual killer, on the basis that the Court of Appeal had found sufficient evidence of causation. But even assuming that defendant was not the actual killer, the 1170.95 court concluded the evidence indicated that defendant was a major participant in the robbery who acted with reckless disregard for human life and that "is affirmed by the special circumstance finding . . . ."

The 1170.95 court therefore denied the petition. Defendant filed a timely notice of appeal.

## *DISCUSSION*

### 1. *Proceedings on a Section 1170.95 Petition*

In 2018, the Legislature adopted Senate Bill No. 1437 which, among other things, amended the felony-murder rule. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*) review granted Mar. 18, 2020.) It amended section 189 to provide that a defendant who was not the actual killer cannot be convicted of felony murder unless the defendant acted with the intent to kill or was a major participant who acted with reckless indifference to human life.

A section 1170.95 petition provides a means for retroactive relief for defendants whose murder convictions do not satisfy the requirements of the amended law. Once a section 1170.95 petition is filed, there follows a multi-step process by which the court first determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility. (*People*

---

[5]    We refer to this court as the "1170.95 court," to distinguish from the original trial court.

6

*v. Torres* (2020) 46 Cal.App.5th 1168, 1177 review granted June 24, 2020.)  If the court determines at this first stage the petitioner is ineligible for relief as a matter of law, the petition is denied; if not, the court proceeds to the next step.  (*Id.* at p. 1178.) That step requires the court to appoint counsel for the defendant, if requested, and permit briefing on the issue of the defendant's entitlement to relief under the statute.  (*Verdugo, supra,* 44 Cal.App.5th at p. 330.)  If the defendant establishes "the post-briefing prima facie showing the petitioner is 'entitled to relief' " (*id*, at p. 329), then the court issues an OSC and proceeds to the third stage.  At the third stage, the court holds a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the defendant on any remaining counts. (§ 1170.95, subds. (c) & (d); *Verdugo,* at p. 328.)

Here, the 1170.95 court apparently found initial eligibility, appointed counsel, and permitted briefing on entitlement to relief.  It did not issue an OSC, as it concluded defendant did not establish a post-briefing prima facie showing of entitlement to relief.

2.    ***Defendant Established a Prima Facie Showing of Entitlement to Relief***

On defendant's appeal, the Attorney General initially argued defendant was not entitled to relief because he was the actual killer or acted with intent to kill, as a matter of law, based on the trial court having found the felony-murder special circumstances true.  Upon further review of the law applicable at the time of defendant's conviction, the Attorney General filed a supplemental brief, conceding defendant is not ineligible for relief as a matter of law.  We accept the concession.

7

Section 189, as amended by Senate Bill No. 1437, provides that a participant in a felony murder is liable for murder only if the defendant (1) was the actual killer; (2) with the intent to kill aided and abetted the actual killer; or (3) was a major participant in the underlying felony who acted with reckless indifference to human life.  (§ 189, subd. (e).)  We briefly address whether any of these three alternatives has been established as a matter of law.

## A.     Actual Killer

The 1170.95 court concluded that defendant was the actual killer, on the basis that the Court of Appeal upheld defendant's conviction against a challenge that there was insufficient evidence of causation.  But recent authority has held that the "actual killer is the person who personally kills the victim," (*People v. Garcia* (2020) 46 Cal.App.5th 123, 152, 155), and the opinion resolving defendant's direct appeal did not decide that precise question.  Exploration of that issue via an order to show cause is accordingly necessary.

## B.     Intent to Kill

The trial court found the felony-murder special circumstances true.  The question is whether, in 1979, a felony-murder special circumstance required a finding of intent to kill. The answer is "not necessarily."

As discussed by the Attorney General in its supplemental brief, in 1983, the Supreme Court concluded that the 1978 death penalty initiative (Proposition 7) must be interpreted to require an intent to kill as an element of the felony-murder special circumstance.  (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 135, overruled in part by *People v. Anderson* (1987) 43 Cal.3d 1104, 1138-1139 [intent to kill is not an element for the actual killer].)  But how had the initiative been interpreted in 1979, at

8

the time of defendant's crime and trial? It was not clear; the *Carlos* opinion itself acknowledges that the issue was raised by a number of pending appeals. (*Carlos,* at p. 136, fn. 6.) There were cases, during this era, in which the jury was not instructed that intent to kill was a necessary element of felony-murder. (See, e.g., *People v. Poggi* (1988) 45 Cal.3d 306, 315, 326 [crime committed in 1980, jury not instructed that intent to kill was a necessary element]; *People v. Kelly* (1985) 163 Cal.App.3d 619, 621-622 [crime committed in 1979, jury not instructed that intent to kill was a necessary element].) It is therefore not certain that, at the bench trial, the court concluded defendant had an intent to kill.[6]

### C. Major Participant Acting With Reckless Indifference

While the felony-murder special circumstance can be satisfied by a finding the defendant was a major participant in the crime acting with reckless indifference to life, that requirement was added to the law by Proposition 115, in 1990. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 286, 297-298.) Defendant's trial, which predated this development by over 10 years, could not have conclusively resolved the issue.

### *DISPOSITION*

The order denying defendant's section 1170.95 petition is reversed and the matter remanded with directions for the trial

---

[6] While there is evidence that would support a finding defendant intended to kill – specifically, his statement about taking Kadous out of the game – there is also evidence that the trial court did not make such a finding. Specifically, the first appellate court opinion, in its discussion of the cruel and unusual punishment argument, indicates, "The trial judge stated he did not believe that the appellant intended to kill the victim."

court to issue an order to show cause and hold a hearing on whether defendant's murder conviction should be vacated.


                                    RUBIN, P. J.

WE CONCUR:


    BAKER, J.


    KIM, J.