Filed 2/20/24  P. v. Payne CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ORRIN WILLIAM PAYNE,<br><br>    Defendant and Appellant. | H050013<br>(Santa Clara County<br>Super. Ct. No. 87249) |

Orrin William Payne committed a burglary and other crimes with Henry Lee Williams at the home of Kathy and Michael Hynan.[1]  Payne verbally threatened to kill Michael and physically restrained him while Williams shot and killed Kathy in an adjacent room.  Following a bench trial conducted in 1983, a court convicted Payne of first-degree felony murder (Pen. Code, § 187[2]) and found true a burglary-murder special circumstance allegation (§ 190.2, former subd. (a)(17)(vii)) and a related aider-and-abettor allegation (§ 190.2, former subd. (b)).  The court sentenced Payne to life in prison without the possibility of parole (LWOP).

---

[1] For clarity, we refer to the Hynans (a married couple) by their first names.  The appellate record includes two spellings for Kathy's full first name:  "Kathline" and "Kathleen."  Given this discrepancy and because, at Payne's sentencing hearing, Michael referred to his wife as "Kathy," we use that first name.

[2] Unspecified statutory references are to the Penal Code.

In 2022, Payne brought a petition under former section 1170.95 (now section 1172.6), asserting he cannot be convicted of murder under current law. The resentencing court denied Payne's petition at the prima facie stage. Whether that denial was error turns on whether the original court that conducted the bench trial (hereafter, court of conviction) found beyond a reasonable doubt that Payne had the intent to kill.

The timing of Payne's trial is significant. In 1983, a defendant could be convicted under California law of felony murder without any showing of an intent to kill, and the law was unsettled on whether an aider and abettor like Payne must have intended to kill or aid in the killing to be found liable for a felony-murder special circumstance.

In explaining its findings and in deciding posttrial motions, the court of conviction made statements suggesting that it had found that Payne intended to aid Williams in killing Kathy. Several reviewing courts have subsequently decided that the trial evidence and record support this conclusion. However, Payne's trial counsel repeatedly raised to the court of conviction the question of Payne's intent, and the court never definitively stated that it found that Payne intended to kill or aid in the killing.

We have carefully reviewed the record, California homicide law at the time of Payne's trial, and our Supreme Court's interpretation of section 1172.6. We decide that the record does not establish conclusively that the court of conviction found beyond a reasonable doubt that Payne intended to kill, and no subsequent appellate decisions establish this finding as a matter of law. Therefore, Payne may not be denied section 1172.6 relief at the prima facie stage (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*)). We reverse the resentencing court's order and remand with directions to issue an order to show cause and conduct further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

On December 7, 1982, Payne and Williams entered the Hynans' home and shot and killed Kathy.

2

A. *Pretrial Proceedings*

Following a preliminary hearing and the filing of an information against Payne and his codefendant Williams (in March 1983), each filed a demurrer. Payne asserted, inter alia, that the alleged special circumstances (§ 190.2, subd. (a)(5), former subds. (a)(17)(i), (a)(17)(vii), (b)) were unconstitutional on their face because they failed to plead that he " 'killed, attempted to kill, or intended to kill' the victim." Payne noted that "[i]n recent months the California Supreme Court ha[d] granted a hearing in every case where a special circumstance found true as to a non-triggerman was sustained on appeal."

In May 1983, by an amended information (information), the district attorney charged Payne and Williams. The jointly charged offenses relating to the crime against the Hynans comprised the murder of Kathy (§ 187; count 1), burglary (§ 459; count 2), and robbery (§ 211; count 3).

As to the murder count, the information alleged three special circumstances—murder to avoid arrest (§ 190.2, subd. (a)(5)), robbery murder (§ 190.2, former subd. (a)(17)(i)), and burglary murder (§ 190.2, former subd. (a)(17)(vii))—and further alleged that Payne and Williams intentionally aided and abetted another in the commission of first degree murder (hereafter, aider-and-abettor allegation) (§ 190.2, former subd. (b)[3]).

For counts 1 through 3, the information alleged that Payne and Williams each personally used a firearm (hereafter, firearm-use allegation) (§ 12022.5). The information also charged Payne alone with seven other offenses (counts 4, 6–11) and

---

[3] Section 190.2, former subdivision (b) provided: "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under [s]ection 190.4 to be true." (Added by Prop. 7, § 6, as approved by voters, Gen. Elec. (Nov. 7, 1978) (hereafter, Proposition 7); see § 190.2, subd. (c) [analogous, current provision].)

alleged that he had previously been convicted of felony grand theft (hereafter, prior-conviction allegation).[4]

The trial court severed the cases against Payne and Williams and ordered each defendant tried separately.

B.  *Bench Trial*

In June 1983, Payne and the district attorney stipulated to a bench trial based primarily on the transcript of the preliminary examination.  (See *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 602 (*Bunnell*).)  Additionally, the district attorney agreed to forego seeking the death penalty against Payne, permit concurrent sentences if Payne were convicted on certain counts, and strike the prior-conviction allegation.  For counts 1 through 3 and their attached allegations, the parties submitted the matter for decision by the court based on victim Michael's preliminary hearing testimony and related exhibits.[5]

1.  Evidence Presented at Bench Trial[6]

On December 7, 1982, Michael and his pregnant wife Kathy shared a home in San Jose with their two young daughters.  When Michael returned home from work about 7:45 p.m., he saw two unfamiliar bicycles parked behind some bushes on the property.

---

[4] The information similarly charged Williams with six other offenses and alleged a prior robbery conviction.

[5] The transcript of Michael's preliminary hearing testimony and the related exhibits are not in the record on appeal and were not before the resentencing court when it decided Payne's section 1172.6 petition.  Nevertheless, a few documents from the original prosecution of Payne were before the resentencing court and appear in our appellate record.

Further, this court granted Payne's unopposed motion to augment the record with certain pleadings and a court order filed during the original prosecution of Payne, as well as reporter's transcripts for certain court proceedings from the original prosecution.  Although the material that has been added to our appellate record through augmentation was not before the resentencing court, we rely on that material (the inclusion of which the Attorney General did not oppose) in deciding this appeal.

[6] We summarize the evidence presented at Payne's bench trial based on the facts stated by the Court of Appeal in *People v. Payne* (Feb. 9, 1989, A024288) [nonpub. opn.]

Michael approached a sliding glass door that led from a screened patio into the home's family room. The door was locked. He noticed his three-and-a-half-year-old daughter watching television in the family room and his wife talking on the telephone in the kitchen. The family room and kitchen were separated by a divider about four and one-half to five feet high. Michael beckoned to his daughter, but she was unable to unlock the sliding glass door. To get Kathy's attention, Michael pounded very loudly on the glass door nine or ten times. He entered the house and told Kathy, "Get off the phone and call the police. Somebody's in the backyard."

Michael went to the master bedroom to get his .22 pellet pistol from the closet. As he turned around with the pistol in his right hand, Payne came out of the darkness and, with his left hand, grabbed Michael's right hand. Michael called for "help" in a loud voice, and Payne placed his right forearm against Michael's throat. Payne had nothing in his hands. In a very low tone of voice Payne told Michael, "Shut up or I'll blow your fucking head off." Michael let his pistol drop to the floor, and Payne spun Michael around and pushed him into the living room.

Payne said, "On the floor facedown" and pushed Michael down hard to the floor, where he assumed a spread eagle position. Michael "sensed" that Payne remained behind him, out of his view. He heard no sounds indicating that Payne had left the immediate area.

As Michael was going down to the floor, he saw a second man (codefendant Williams) enter the living room through the sliding glass door from the patio. Both Payne and Williams were wearing hooded sweatshirts with the hood tied securely around the head. Upon entering the house, Williams turned and stepped from the living room

---

at pages 2–5 (*Payne I*). A copy of the opinion in *Payne I* is included in the record of this appeal. We do not use quotation marks in part I.A.1. to indicate material that is copied directly from the *Payne I* opinion. Language that appears in quotation marks in part I.A.1. appeared as such in that opinion.

5

into the family room. Michael heard Williams yell, "Put the fucking phone down." Kathy said, "Please don't shoot me." Michael then heard two shots, each followed by a "yelp" from Kathy.

Almost immediately after the shooting Williams came around the corner from the family room and into the living room. Michael could see that Williams was holding a revolver. Williams put his foot on Michael's head and said, "Where is the money, all of it?" Michael could not see Payne at this point, but he was still nearby. Michael reached into his pocket, pulled out $17, and threw it on the floor. He saw a hand pick up the money. One of the men (Michael was not sure who) removed Michael's checkbook and wallet from his rear pants pocket.

After Williams took his foot off Michael's head, Michael saw one of the men heading toward the sliding glass door in the back of the house. The other reached down, took off Michael's glasses, and threw them against the wall. Payne and Williams ran side by side out the sliding glass door onto the patio. Michael went to Kathy and found that she was dead.

Michael testified that he felt there was "no reason to doubt" Payne's statement during the crime that he was armed, even though Michael did not see a gun in Payne's possession and did not see or feel anything metallic or any bulges like weapons.

Michael estimated that about three to four minutes passed from the time he entered the house to the time the assailants fled. He also estimated that Williams was out of his sight for about five to seven seconds from the time Williams entered the family room until he returned to the living room. The first shot was fired less than a second after Kathy spoke. The second shot came about a second later. Michael did not believe that Payne could have been the person who shot Kathy.

Later that evening Michael noticed that the bicycles he had seen were gone and that his pellet gun, which he had dropped in the master bedroom, was missing.

## 2. Argument on the Evidence

Before making its decision on the charges and allegations, the court of conviction heard arguments from counsel about the evidence.

The prosecutor conceded that "the transcript and the evidence submitted to [the] court does not indicate that Mr. Payne personally killed [Kathy]" and there was no support for the firearm-use allegation. Nevertheless, the prosecutor contended that Payne could be found guilty of first degree murder based on either the felony-murder rule or as "a principal in this case under the aiding and abetting theory." As to the latter theory of first degree murder liability, the prosecutor said, "Payne and his course of conduct while inside the house and with respect to [Michael] Hynan directly contributed, promoted and assisted in the murder of [Kathy] Hynan."

Regarding the special circumstances, the prosecutor asserted that the murder-to-avoid-arrest special circumstance allegation and the burglary-murder special circumstances allegation were true but conceded that the robbery-murder special circumstance was not true. The prosecutor further asserted that the special circumstances applied in this case under section 190.2, subdivision (a), because "Payne is guilty of murder in the first degree by virtue of the aiding and abetting principle or the felony murder rule." The prosecutor made no specific argument regarding the aider-and-abettor allegation under section 190.2, former subdivision (b) but did note that the prosecution was not seeking the death penalty against Payne.

Payne's trial counsel challenged section 190.2 as "an unconstitutional scheme as to a non-killer" and asserted that to make the scheme arguably constitutional, "[t]he court must find the intent to kill." Counsel further asserted that the evidence did not prove Payne harbored an intent to kill and, in the absence of an intent to kill, the burglary-murder special circumstance should be found untrue.

Regarding the aider-and-abettor allegation, trial counsel stated, "I really can't advise the court whether or not it's absolutely constitutionally required and statutorily

required that" the holding of *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) be applied to section 190.2, former subdivision (b).[7] Counsel continued, "or whether [section] 190.2[, former subdivision] (b) supplants the [burglary-murder] special circumstance in this case or is supplemental to or whether or not it's able to stand as a special circumstance on its own four legs independent of [the burglary-murder special circumstance]."

Counsel noted that there was a dearth of published case law addressing "the liability of a non-killer" under section 190.2, subdivision (a)(17) and former subdivision (b), because the California Supreme Court had "vacated or depublished" several appellate decisions on the subject.[8]

_____

[7] In *Enmund*, the United States Supreme Court reversed a death judgment "[b]ecause the Florida Supreme Court affirmed the death penalty . . . in the absence of proof that [the defendant] killed or attempted to kill, and regardless of whether [the defendant] intended or contemplated that life would be taken." (*Enmund*, *supra*, 458 U.S. at p. 801.)

[8] In this appeal, Payne has requested judicial notice of five depublished California Court of Appeal opinions (decided between April 13, 1981, and October 25, 1982) that "reached differing conclusions on whether the 1978 death penalty initiative permitted imposition of a sentence of death or [LWOP] on an individual who neither killed nor intended to kill." The California Supreme Court granted review of those opinions prior to its December 1983 decision in *Carlos v. Superior Court* (1983) 35 Cal.3d 131 (*Carlos*), overruled by *People v. Anderson* (1987) 43 Cal.3d 1104, 1147 (*Anderson*).

In *Carlos*, our Supreme Court noted that a "number of appeals pending before [it] present the question whether intent to kill is required for felony murder special circumstances" as to aiders and abettors or actual killers. (*Carlos*, *supra*, 35 Cal.3d at p. 136, fn. 4.) The court decided to "construe the word 'intentionally' in subdivision (b) of section 190.2 to apply to all defendants—actual killers and accomplices alike—and to require an intent to kill before a defendant is subject to a special circumstance finding under paragraph 17 of that section." (*Id.* at pp. 153–154.)

In this appeal, the Attorney General did not oppose Payne's request for judicial notice. Under these circumstances, we grant Payne's request as to the following depublished opinions: *People v. Kelly* (Apr. 13, 1981, Crim. No. 35988) [previously published at 117 Cal.App.3d 944]; *People v. Marshall* (July 16, 1981, Crim. No. 11801) [previously published at 121 Cal.App.3d 627]; *People v. Pendleton* (Aug. 16, 1982, Crim. No. 39472) [previously published at 135 Cal.App.3d 41]; *People v. Perez* (Aug.

8

### 3. Court of Conviction's Findings on the Evidence[9]

On June 30, 1983, the court of conviction found Payne guilty of first degree murder (count 1), "expressly rel[ying] upon the felony murder rule." (See *Payne I*, *supra*, A024288, at pp. 5, 10.) The court found not true the firearm-use allegation attached to that count. (*Id.* at p. 5.)

Regarding the special circumstances, the court found true the burglary-murder special circumstance allegation. It stated, "As to the third special circumstance alleged by the People, the court makes its finding that said special circumstance is true."[10] It found not true the murder-to-avoid-arrest and robbery-murder special circumstances allegations. (*Payne I*, *supra*, A024288, at p. 5.)

Regarding the aider-and-abettor allegation attached to the first degree murder charge, the court stated verbally it "finds that the defendant intentionally aided and abetted in the commission of murder in the first degree in that he intentionally and

---

26, 1982, Crim. No. 38480) [previously published at 135 Cal.App.3d 406]; *People v. Smith* (Oct. 25, 1982, Crim. No. 13183 [previously published at 136 Cal.App.3d 961]); and *People v. Sims* (Oct. 25, 1982, Crim. No. 40314) [previously published at 136 Cal.App.3d 942]. (See Evid. Code, §§ 452, subds. (c), (d)(1), 459; *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 955, fn. 2.) Although we judicially notice these depublished opinions because they are relevant to the legal landscape before *Carlos* was decided, we do not rely on them as precedent. (See Cal. Rules of Court, rule 8.1115; see also *People v. Garcia* (1984) 36 Cal.3d 539, 549 (*Garcia*) [describing *Carlos* as "address[ing] a question of first impression"].)

[9] At the conclusion of a bench trial, the judge announces his or her "findings upon the issues of fact, which shall be in substantially the form prescribed for the general verdict of a jury and shall be entered upon the minutes." (§ 1167; see also § 689; *People v. Seneca Ins. Co.* (2003) 29 Cal.4th 954, 958.)

[10] In an apparent misstatement of the court's finding on the burglary-murder special circumstance, the clerk's minutes of the proceeding reported that finding to include language not stated verbally by the court; namely, "The court finds that the third alleged special circumstance is true *in that the defendant restrained Michael Hynan*." (Capitalization omitted & italics added.) The language about Payne's restraint of Michael appears in the court's verbal explanation of its findings on the aider-and-abettor allegation.

illegally restrained Michael Hynan by force and fear as Henry Lee Williams accomplished the first degree murder."[11]  (See *Payne I*, *supra*, A024288, at pp. 5, 7.)

The court also found Payne guilty of first degree burglary (count 2) and robbery (count 3) and found not true the firearm-use allegations attached to counts 2 and 3. Finally, the court found Payne guilty of three other offenses (counts 4, 6 & 9) and not guilty of four offenses (counts 7, 8, 10 & 11).

### 4. Motions and Sentencing

Payne filed a "[m]otion to [m]odify [the] [v]erdict" based on insufficient evidence (hereafter, motion to modify) (§ 1181) and, alternatively, moved the court of conviction to strike the special circumstance in the interest of justice (§ 1385).

In August 1983, the court of conviction held a hearing on Payne's motions and sentencing.

Trial counsel asserted that "the evidence is not sufficient to support the finding of truth of the [burglary-murder] special circumstance to the extent the court found under [section] 190.2[, former subdivision] (b) that [Payne] intentionally aided and abetted in the killing in the first degree of [Kathy]."

Trial counsel described the court's finding on the aider-and-abettor allegation as follows:  "The court made the express finding that Mr. Payne intentionally aided and abetted Mr. Williams not just in the burglary but in the commission of murder of [Kathy] and he did that by restraining, by force or fear, [Michael] in the living room area while Mr. Williams killed [Kathy] in the kitchen."  Counsel asserted that there was insufficient evidence to show that Payne "remained in the living room restraining [Michael] by force or fear.  And even if he did remain in the living room and restrained him by force and fear, the evidence is insufficient to show that he intentionally aided and abetted Mr. Williams, sharing the purpose that Mr. Williams had, which was to kill [Kathy]."

---

[11] The clerk's minutes do not mention this finding by the court.

10

Counsel added, "intentionality . . . means that you share the purpose of the perpetrator, you intend to bring about the result that he wants done. That evidence is not in this case."

The court of conviction denied Payne's motion to modify stating: "To be quite frank with you, the issue is a complex one in my mind. I am sure the issue will be one which will have a long legal history and in my view, the issue as to what is required for the special circumstance finding perhaps will be resolved by courts of much higher posture than this one. For whatever it's worth, in my view, I have reviewed the evidence in my own mind again and I believe the evidence is sufficient for the finding." In addition, the court denied Payne's motion to strike the special circumstance in the interest of justice.

The court of conviction sentenced Payne to LWOP on count 1, stayed the punishment on count 2 (burglary) and count 3 (robbery) (§ 654), and imposed a total, concurrent determinate term of four years and four months for counts 4, 6, and 9. (See *Payne I*, *supra*, A024288, at p. 1.)

C. *Direct Appeal*

On appeal from his judgment of conviction, Payne "initially contended that (1) the special circumstance finding was not supported by the evidence and was erroneous as a matter of law; (2) the finding that [he] was an aider and abettor in the crime of murder was contrary to law; and (3) the evidence was insufficient to support the finding that [he] was guilty of robbery." (*Payne I*, *supra*, A024288, at pp. 1–2.)

In February 1986, a divided panel of the Court of Appeal affirmed the judgment. (*People v. Payne* (Feb. 27, 1986, A024288), review granted June 24, 1986, Crim. No. 25532 [previously published at 195 Cal.App.3d 1495].) In June 1986, our Supreme Court granted review. (*Payne I*, *supra*, A024288, at p. 1.)

In July 1988, the Supreme Court transferred the matter back to the Court of Appeal for reconsideration in light of *People v. Odle* (1988) 45 Cal.3d 386, 410–415 (*Odle*) [overruled on another ground in *People v. Prieto* (2003) 30 Cal.4th 226, 256

11

(*Prieto*)], *Anderson*, *supra*, 43 Cal.3d at pp. 1138–1148, and *People v. Warren* (1988) 45 Cal.3d 471, 486–488 (*Warren*).**12** (*Payne I*, *supra*, A024288, at p. 1.)

In supplemental briefing filed after the Supreme Court's transfer, Payne "stressed his claim that the [] court [of conviction] failed to make the requisite findings that [he] had a specific intent to kill and that he had the requisite mental state for an aider and abettor, citing *People v. Beeman* (1984) 35 Cal.3d 547."**13** (*Payne I*, *supra*, A024288, at p. 2.)

In *Payne I*, a divided panel of the Court of Appeal rejected Payne's claims of error and affirmed the judgment. (*Payne I*, *supra*, A024288, at pp. 2, 11.)

The majority in *Payne I* explained: "Our review of the record convinces us that the [] court [of conviction] made the requisite finding of intent to kill or to aid in killing." (*Payne I*, *supra*, A024288, at p. 7.) The majority quoted the court of conviction's finding

---

**12** In *Odle*, our Supreme Court rejected a claim that the trial court erred by omitting instructions on the elements of a special circumstance, concluding that the failure to instruct was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18. (*Odle*, *supra*, 45 Cal.3d at pp. 414–415.)

In *Anderson*, our high court overruled *Carlos* and held that "intent to kill is not an element of the felony-murder special circumstance; but when the defendant is an aider and abetter rather than the actual killer, intent must be proved." (*Anderson*, *supra*, 43 Cal.3d at p. 1147; see also *id*. at p. 1145 [section 190.2, former subdivision (b) "declares that the felony-murder aider and abetter is eligible for the death penalty if intent to kill is proved"; "the aider and abetter must intentionally *aid in a killing*"].)

In *Warren*, our Supreme Court rejected a claim that the trial court had failed to properly instruct on intent to kill for the felony-murder and multiple-murder special circumstances. The Supreme Court concluded that a reasonable juror would have understood the following instruction as requiring a determination that the defendant acted with intent to kill: " '[T]he defendant was . . . a person who intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of murder in the first degree.' " (*Warren*, *supra*, 45 Cal.3d at p. 487.)

**13** In *Beeman*, our Supreme Court "conclude[d] that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman*, *supra*, 35 Cal.3d at p. 560 (*Beeman*).)

on the aider-and-abettor allegation and held that that finding "was the unambiguous equivalent of a finding that [Payne] intended to aid in the killing, as required by *Carlos*, and also by the subsequent decision in *People v. Beeman*, *supra*, 35 Cal.3d at pages 554–561, defining the elements of aiding and abetting. In other words, the court [of conviction] found not only that [Payne] intentionally aided in the burglary, but also that when he restrained [Michael], he did so with the intent of aiding Williams in the killing of the victim." (*Payne I*, *supra*, A024288, at pp. 7–8, underscoring omitted & italics added.)

The *Payne I* majority explained that its "conclusion about the court's meaning" was supported by the court of conviction's implicit rejection of trial counsel's statement (made during counsel's argument on the motion to modify) that " 'the evidence is insufficient to show that [Payne] intentionally aided and abetted Mr. Williams, sharing the purpose that Mr. Williams had, which was to kill [Kathy]." (*Payne I*, *supra*, A024288, at p. 8, underscoring omitted.) In ruling on the motion to modify, the court of conviction said, "I have reviewed the evidence in my own mind again and I believe the evidence is sufficient for the finding." (*Ibid.*, underscoring omitted.)

Additionally, the *Payne I* majority concluded that the court of conviction's "finding was supported by ample evidence in the form of [Payne]'s statements, actions, and the reasonable inferences to be drawn therefrom." (*Payne I*, *supra*, A024288, at p. 9.)

The *Payne I* majority further made its "own independent finding that [Payne] intended to kill or to aid in the killing." (*Payne I*, *supra*, A024288, at pp. 9–10.) The court explained, "Because the question of the truth of a special circumstance allegation is

13

one affecting the determination not of guilt or innocence, but of the appropriate penalty, this court is a proper tribunal to resolve it."[14]  (*Id.* at p. 10.)

The dissent in *Payne I* disagreed with the majority's conclusion that the court of conviction's stated finding on the aider-and-abettor allegation determined that Payne "acted with intent to aid Williams in killing [Kathy]."  (*Payne I*, *supra*, A024288, at p. 3 (dis. opn. of White, P. J.).)  The dissenting justice explained:  "The first degree murder of which the [] court [of conviction] was speaking was felony murder and [Payne] could have intentionally aided in the underlying felony by his restraining of Michael Hynan even if this restraint could also possibly be said to have aided Henry Williams in his killing of [Kathy] Hynan, but this does not mean the court found that [Payne] intended that his restraint of [Michael] Hynan aid in the killing of [Kathy] Hynan.  I am therefore of the opinion that the [] court's finding did not amount to the finding required by *Carlos* and *Anderson* that [Payne] intended to kill or aid in a killing."  (*Ibid.*, underscoring omitted & italics added.)

The dissenting justice concluded:  "In light of the fact that the court [of conviction] was aware of this legal issue but still failed to make a clear finding that

---

[14] For this proposition, the *Payne I* majority cited *Cabana v. Bullock* (1986) 474 U.S. 376, 385–386 and *Odle*, *supra*, 45 Cal.3d at pages 410–415.  Subsequent precedent, however, abrogates *Odle*'s holding (which was grounded on *Cabana v. Bullock*).  In *Prieto*, our Supreme Court explained the abrogation:  "In *Odle*, we held that 'there is no right under the Sixth or Eighth Amendments to the United States Constitution to have a jury determine the existence of all of the elements of a special circumstance.'  [Citation.]  This holding is now erroneous after *Ring v. Arizona* (2002) 536 U.S. 584, 609, which held that a jury—and not a judge—must find an 'aggravating circumstance necessary for imposition of the death penalty.' "  (*Prieto*, *supra*, 30 Cal.4th at p. 256.)  Moreover, under *Bunnell*, "the defendant who submits his cause on the transcript does not give up his right to any trial, only to a jury trial, and, unless otherwise specified, to present additional evidence in his own defense."  (*Bunnell*, *supra*, 13 Cal.3d at p. 604.)
In this appeal, the Attorney General makes no argument that the Court of Appeal's " 'independent finding' " on the intent to kill or aid in the killing renders Payne ineligible for resentencing relief.  Thus, we do not consider that appellate court finding in reaching our decision in this opinion.

[Payne] had an intent to kill [Kathy] Hynan, it is reasonable to infer that the court concluded no such intent was required. Even if the facts do not compel this conclusion, I cannot say beyond a reasonable doubt that the court applied the correct law in this case." (*Payne I*, *supra*, A024288, at pp. 4–5 (dis. opn. of White, P. J).)

In addition, the dissent disagreed with the majority's independent finding that Payne harbored the requisite intent to kill or to aid in the killing. The dissenting justice opined that such a finding was not supported by the record as a matter of law. (*Payne I*, *supra*, A024288, at p. 5 (dis. opn. of White, P. J).)

The California Supreme Court denied review. (See *Payne v. Borg* (9th Cir. 1992) 982 F.2d 335, 338 (*Borg*).)

D. *Federal Habeas Corpus Proceeding*

Payne sought collateral relief in a federal habeas corpus proceeding. The federal district court granted relief, finding there was insufficient evidence to prove that Payne harbored the requisite intent for the special circumstance finding. (See *Borg*, *supra*, 982 F.2d at pp. 336, 338.) The Attorney General appealed. In addition, Payne cross-appealed from the district court's denial of his alternative due process claims that alleged the court of conviction failed to make a sufficient finding on the intent issue and the Court of Appeal improperly presumed the trial judge found the requisite intent. (*Id*. at pp. 336–337, 338.)

A divided panel of the Ninth Circuit reversed the district court. The two-judge majority concluded "[s]ufficient evidence supported the state trial court's conclusion that Payne intended to help Williams kill [Kathy] Hynan, and restrained Michael Hynan in order to accomplish that objective."[15] (*Borg*, *supra*, 982 F.2d at p. 343; see also *id*. at

---

[15] The dissenting Ninth Circuit judge did not agree "that the evidence establishes beyond a reasonable doubt that Payne restrained [Michael] Hynan knowing Williams was going to kill [Kathy] Hynan and *intending* to help him accomplish that purpose." (*Borg*, *supra*, 982 F.2d at p. 343 (dis. opn. of Hall, J.).)

15

pp. 339–342.) In addition, the Ninth Circuit rejected Payne's cross-appeal. (*Id*. at p. 343.) The United States Supreme Court denied Payne's petition for writ of certiorari. (*Payne v. Borg* (1993) 510 U.S. 843.)

E. *2022 Resentencing Petition and Resentencing Court's Ruling*

In January 2022, Payne filed on his own behalf a petition for resentencing under former section 1170.95 (now section 1172.6).

The resentencing court appointed counsel for Payne and received briefing from the parties. On April 27, 2022, the resentencing court held a hearing on Payne's petition.

Payne's counsel argued that "[t]here was some ambiguity in the [court of conviction]'s finding" and "[n]otwithstanding the finding by the appellate court, there was not a specific trial court finding as to intent to kill." The district attorney countered that the court of conviction "necessarily made" the intent to kill finding "[b]ecause that was the law back prior to 1991 for the special circumstance. And the court did make that finding. [¶] And then the ambiguity that [Payne's counsel] argues about was resolved adversely to [Payne]" by other courts. Payne's counsel replied that law of the case should not apply under the present circumstances.

The resentencing court denied Payne's petition stating, at the hearing, that "the record of conviction contains facts refuting the allegations in [the] petition" and Payne "is ineligible for resentencing under [section 1172.6] as a matter of law." The court also issued a written order explaining its denial.

In its written order, the resentencing court stated that, in reviewing the record, it "d[id] not need to engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " The court described the history of Payne's direct appeal and federal habeas corpus proceeding. The court noted that the Court of Appeal had "concluded that the [] court [of conviction], sitting as the trier of fact, both found [Payne] intended to kill and there was sufficient evidence of the same." The court stated further, "*At the time of [Payne]'s conviction, section 190.2 required an aider and abettor to have*

16

*the intent to kill in order to find the felony murder special circumstance true.*"[16] (Italics added.) The court observed that the disputed question regarding "whether the [] court [of conviction] made the necessary findings was extensively litigated" and resolved against Payne. The court explained, "This is the end of the matter as the intent requirement for [Payne]'s pre-1991 special circumstances satisfies the requisite malice under the amended sections 188 and 189."

Citing *People v. Allison* (2020) 55 Cal.App.5th 449, 461 and *People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*), the resentencing court concluded that section 1172.6 was "not a vehicle to attack issues already litigated and decided," and "[n]ot only has [Payne]'s intent been resolved by a finder of fact, but so has his claimed ambiguity about the [] court [of conviction's] findings."[17] The court further concluded that "[s]ince the probative value of appellate opinions is case specific [citation], [Payne]'s collateral estoppel and other arguments have no merit."

Payne appealed the resentencing court's order denying his petition.

## II. DISCUSSION

Payne contends the record of conviction does not conclusively demonstrate that he intended to kill, which in turn requires that we reverse the resentencing court's order and remand for further proceedings. He asserts that given the court of conviction determined the truth of the felony-murder special circumstance before *Carlos*, "it may not be presumed that the [court of conviction]'s special circumstances verdict establishes that Payne had the intent to kill." He further contends "neither the verdict itself, nor the supplementary comments made by the [court of conviction] concerning its true finding on

---

[16] The Attorney General concedes this statement was error. The Attorney General states that the resentencing court "incorrectly concluded that the felony-murder special circumstance required a finding of intent to kill" at the time of Payne's bench trial. We accept the Attorney General's concession based on our review of the law and the record.

[17] After the resentencing court issued its decision, our Supreme Court disapproved of *Allison* in *People v. Strong* (2022) 13 Cal.5th 698, 718, footnote 3 (*Strong*).

the special circumstance unequivocally demonstrate that the court found Payne had the intent to kill."

Additionally, Payne claims that issue preclusion cannot bar his petition at the prima facie case stage, "[t]he resentencing court erred in using the Court of Appeal's conclusion that intent to kill was established by substantial evidence" as a basis to deny his petition, and his counsel provided constitutionally ineffective assistance by failing to proffer a more complete record to the resentencing court (i.e., to include the material that has been added to the appellate record through record augmentation) and by erroneously conceding that at the time of Payne's trial, the felony-murder special circumstance required proof of an intent to kill.

The Attorney General counters that "the record of conviction established as a matter of law that in finding the felony-murder special circumstance true, the [] court [of conviction] found beyond a reasonable doubt that [Payne] intended to kill or to aid in the killing." The Attorney General agrees with Payne that when the court of conviction stated its findings at the conclusion of the bench trial, the California Supreme Court had not yet decided *Carlos*—holding that a felony-murder special circumstance allegation required a finding of an intent to kill. Nevertheless, the Attorney General asserts that "it was not the [court of conviction's] true finding on the special circumstance allegation in and of itself that established [Payne]'s ineligibility for resentencing relief. It was the Court of Appeal's determination, buttressed by the Ninth Circuit's decision, that the [] court [of conviction] found beyond a reasonable doubt that [Payne] intended to kill or to aid in the killing that precluded [Payne]'s resentencing eligibility." In other words, "[t]he Court of Appeal's conclusions regarding the [] court [of conviction]'s findings rendered [Payne] ineligible for resentencing relief as a matter of law."

A. *Legal Principles*

"Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is

18

not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.) However, the bill did not eliminate direct aiding and abetting liability for murder "because a direct aider and abettor to murder must possess malice aforethought." (*Id*. at p. 848.)

Senate Bill No. 1437 (Senate Bill 1437) also added section 189, subdivision (e), to narrow the application of the felony-murder rule. (Stats. 2018, ch. 1015, § 3; see *Curiel*, *supra*, 15 Cal.5th at p. 448.) "[S]ection 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' [citation] and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' [citation]. Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . [s]ection 190.2' — that is, the statute defining the felony-murder special circumstance." (*Strong*, *supra*, 13 Cal.5th at p. 708, quoting § 189, subd. (e).[18])

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Strong*, *supra*, 13 Cal.5th at p. 708.) When the trial court receives a petition under section 1172.6 requesting vacatur of a murder conviction and resentencing, and "containing the necessary declaration and other required information, the court must evaluate the petition

---

[18] Section 189, subdivision (e), provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2."

'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid.*, citing *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*), § 1172.6, subd. (c).)

During the prima facie stage of review, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Ibid.*) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*) Although the court may rely on the record of conviction (including appellate opinions) in determining whether defendant has made a prima facie showing, " 'an appellate opinion might not supply all answers,' " and the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972; see also § 1172.6, subd. (d)(3) ["The court may [] consider the procedural history of the case recited in any prior appellate opinion" at a post-order to show cause evidentiary hearing].)

An allegation that the petitioner could not currently be convicted of a homicide offense because of changes made to homicide law by Senate Bill 1437 "is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

20

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B. *Analysis*

Payne's bench trial occurred prior to the California Supreme Court's decision in *Carlos*, which addressed an open question regarding whether section 190.2, subdivision (a)(17) and former subdivision (b) required proof of an intent to kill for an actual killer or an aider and abettor. (See *Carlos*, *supra*, 35 Cal.3d at p. 136, fn. 4.) Several months after Payne's conviction, the *Carlos* court concluded that section 190.2 "should be construed to require an intent to kill or to aid in a killing as an element of the felony murder special circumstance." (*Id*. at p. 135.) The *Garcia* court later "concluded that because the *Carlos* opinion does not overturn prior law, but stands as the first authoritative construction by this court of the felony-murder provision of the 1978 initiative [(i.e., Prop. 7)], it should apply to all cases not yet final arising under that enactment." (*Garcia*, *supra*, 36 Cal.3d at pp. 544–545.)

Although Payne and the Attorney General seemingly agree about the unsettled state of the law at the time of Payne's conviction, they offer differing views on the effect, under section 1172.6, of the court of conviction's burglary-murder special circumstance and aider-and-abettor findings and the Court of Appeal's conclusions in *Payne I* concerning those findings.

Regarding the court of conviction's findings, Payne contends the court made ambiguous "secondary" or "supplementary" statements when stating its findings on the burglary-murder special circumstance and aider-and-abettor allegations. Relying principally on *People v. Grana* (1934) 1 Cal.2d 565, 570 and section 1167, he further asserts that the Court of Appeal in *Payne I* and, in turn, the resentencing court in denying his petition should not have relied on those allegedly secondary or supplementary statements. Alternatively, Payne argues that the court of conviction's findings and additional statements on the special circumstance and aider-and-abettor allegations were

21

ambiguous and "do not conclusively establish that the court [of conviction] found that Payne had the intent to kill or to aid and abet an intentional killing."

We need not reach Payne's claim regarding alleged improper reliance on secondary or supplementary statements because, even taking those statements into consideration, we reject the Attorney General's contention that they conclusively establish that Payne harbored an intent to kill or to aid in a killing. (See *Strong*, *supra*, 13 Cal.5th at p. 708; *Curiel*, *supra*, 15 Cal.5th at p. 463.)

As described *ante*, when the court of conviction entered its findings against Payne the law was unsettled. At that time, no precedent required the court of conviction to find that Payne harbored an intent to kill in order to find the burglary-murder special circumstance under section 190.2 true. As the *Carlos* court explained, neither subdivision (a)(17) nor former subdivision (b) of section 190.2 made "clear whether an intent to kill is an essential element of the special circumstance; paragraph 17 is silent on that subject, subdivision (b) ambiguous." (*Carlos*, *supra*, 35 Cal.3d at p. 135.) Furthermore, "[u]nder the felony-murder doctrine as it existed at the time of [Payne]'s trial, 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " (*Strong*, *supra*, 13 Cal.5th at p. 704.)

Even though Payne's trial counsel argued repeatedly that proof of an intent to kill was required under section 190.2, the court of conviction never expressly stated in its findings on the burglary-murder special circumstance allegation and the aider-and-abettor allegation that Payne intended to kill. Rather, the court of conviction found the burglary-murder "special circumstance is true" and stated that Payne " 'intentionally aided and abetted in the commission of first degree murder' " by intentionally restraining Michael

22

" 'as Henry Lee Williams accomplished the first degree murder.' " (*Payne I, supra*, A024288, at p. 7.)

Similarly, when overruling Payne's motion to modify, the court of conviction failed to state expressly that it had found Payne harbored an intent to kill. Rather, in the face of trial counsel's argument that the evidence was insufficient "to the extent the court found" Payne had "intentionally aided and abetted in the killing," the court noted that the issue of "what is required for the special circumstance finding" is "a complex one" and "will be resolved by courts of much higher posture than this one."

The court of conviction's findings at the close of Payne's trial and its ruling on his motion to modify evince uncertainty on whether "they necessarily reflect" (*Curiel, supra*, 15 Cal.5th at p. 465) a factual finding that Payne intended to kill. As the dissent in *Payne I* explained with respect to the court's aider-and-abettor finding, that "statement does not indicate that the court found [Payne] had acted with intent to aid Williams in killing [Kathy] Hynan," because the determination that Payne intentionally aided and abetted first degree murder could have encompassed only intentionally aiding and abetting "in the underlying felony by his restraining of Michael Hynan even if this restraint could also possibly be said to have aided Henry Williams in his killing of [Kathy] Hynan." (*Payne I, supra*, A024288, at p. 3 (dis. opn. of White, P. J.).)

The dissent's understanding of the court of conviction's finding with respect to the intent-to-kill element accords with our Supreme Court's subsequent explication of section 190.2, former subdivision (b) in *People v. Dickey* (2005) 35 Cal.4th 884. There, the defendant contended that for the actus reus of the felony-murder special circumstance under former subdivision (b) of section 190.2 and *Anderson*, "the prosecution was required to prove, not only that he aided or abetted the burglaries and robberies, but also that he 'assisted in the killings themselves.' " (*Dickey*, at p. 900.) The *Dickey* court rejected the defendant's argument, explaining that "[s]ection 190.2, former subdivision (b) is not helpful to defendant because, under the felony-murder doctrine, he *was* found

23

guilty of aiding or abetting first degree murders. All persons aiding or abetting the commission of burglary or robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Ibid.*) The court also explained that the defendant's reliance on *Anderson* was "unfounded" because "[t]he proposition advanced by defendant—for a felony-murder special circumstance, the aiding or abetting has to relate to the act of killing itself, rather than just the underlying felony—was not considered by the court in *Anderson*." (*Id.* at p. 901.)

Considering the view of the dissenting justice in *Payne I* and *Dickey*'s explication of section 190.2, former subdivision (b), we cannot confidently conclude that the court of conviction's pre-*Carlos* finding—which mirrored former subdivision (b) and found that Payne " 'intentionally aided and abetted in the commission of murder in the first degree' " by "intentionally and illegally" restraining Michael as "Williams accomplished the first degree murder"—necessarily included a finding that Payne intended to kill, as currently required by section 189, subdivision (e)(2). (*Payne I*, *supra*, A024288, at p. 7.)

Under the present circumstances, and given that the court of conviction found Payne guilty of first degree murder only under the former felony-murder rule that did not require an intent to kill (or any malice) (see *Strong*, *supra*, 13 Cal.5th at p. 704), we decide that the court's findings on the burglary-murder special circumstance and aider-and-abettor allegations do not conclusively establish that Payne harbored an intent to kill. In other words, the court of conviction's findings "do not reflect all of the factual findings necessary to support a murder conviction under current law. Thus, they do not refute [Payne]'s allegation that he could not be convicted of murder under sections 188 and 189 as amended, and they do not establish conclusively that [Payne] is ineligible for relief." (*Curiel*, *supra*, 15 Cal.5th at p. 465.)

Having decided that we are not "confident the [court of conviction] *necessarily* found" (*Curiel*, *supra*, 15 Cal.5th at p. 467) that Payne intended to kill, we turn to the Attorney General's contention that Payne, nonetheless, is ineligible for relief under

24

section 1172.6, because of findings by the *Court of Appeal*. In *Payne I* the Court of Appeal concluded "that 'the [] court [of conviction] made the requisite finding of intent to kill or to aid in the killing' [citation] and did so beyond a reasonable doubt."

We do not agree that the majority opinion in *Payne I* establishes conclusively that Payne is ineligible for relief under section 1172.6. "[A]lthough an appellate opinion affirming a conviction may be considered in determining whether a prima facie showing has been made under section [1172.6], on prima facie review such an opinion may not be conclusive." (*People v. Langi* (2022) 73 Cal.App.5th 972, 979; see *Lewis*, *supra*, 11 Cal.5th at p. 972.)

The majority in *Payne I* stated it was "convince[d]" "that the [] court [of conviction] made the requisite finding of intent to kill or to aid in killing." (*Payne I*, *supra*, A024288, at p. 7.) The majority, however, did not state the standard by which it determined that the court had made the intent-to-kill finding. (See *id*. at pp. 7–9.) By contrast, the dissent applied a "beyond a reasonable doubt" standard in concluding that the circumstances failed to show the court found Payne had acted with the requisite intent. (See *id*. at pp. 3–5 (dis. opn. of White, P.J.).) Given the split among the justices in *Payne I* on their interpretation of the court of conviction's finding on the aider-and-abettor allegation, including the majority's failure to articulate the standard under which it was convinced that the court of conviction had found intent to kill, we cannot deduce that the majority's opinion conclusively demonstrates the court of conviction found Payne harbored the intent-to-kill mens rea required by current law for a non-actual killer. (See § 189, subd. (e)(2).)

Furthermore, in *Strong*, our Supreme Court stated that "[s]ection 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder." (*Strong*, *supra*, 13 Cal.5th at

25

p. 720.)  The *Strong* court further explained that "[n]either the jury's pre-*Banks*[19] and *Clark*[20] findings [on a defendant's major participation and reckless indifference to human life] nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause."  (*Ibid*.)

The present case is similar to *Strong* in that the court of conviction's findings (made before *Carlos* settled the felony-murder special circumstance law for aiders and abettors) do not necessarily include the currently required beyond-a-reasonable-doubt determination that Payne intended to kill.  Moreover, the Court of Appeal's interpretation of the court's findings is not equivalent to either a fact finder's determination of the issue at a trial or a resentencing court's determination after a hearing afforded by section 1172.6, subdivision (d).

As for the Ninth Circuit's decision in the federal habeas corpus proceeding, we similarly decide that court's interpretation of the court of conviction's findings do not render those findings conclusive as to a determination of the requisite mental state under current law.

We recognize that section 1172.6 is not "intended to permit wholesale relitigation of findings supporting murder convictions."  (*Strong*, *supra*, 13 Cal.5th at p. 715; see also *Coley*, *supra*, 77 Cal.App.5th at p. 549; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)  The question before us, however, is not the same that was examined by the Court of Appeal or the Ninth Circuit.  We must decide whether the court of conviction's findings and the appellate court decisions foreclose as a matter of law the possibility that the burglary-murder special circumstance and aider-and-abettor allegations were found

---

[19] *People v. Banks* (2015) 61 Cal.4th 788.
[20] *People v. Clark* (2016) 63 Cal.4th 522.

true without a finding of an intent to kill. (See *Curiel*, *supra*, 15 Cal.5th at p. 470.) We answer that question in the negative.

Under our independent review of the record of conviction, we conclude that it does not demonstrate the court of conviction expressly or necessarily found, before *Carlos*, that Payne harbored an intent to kill. We further conclude that neither the split-decision of the Court of Appeal interpreting the court of conviction's burglary-murder special circumstance and aider-and-abettor findings nor the Ninth Circuit's similar interpretation in federal habeas corpus proceedings makes Payne ineligible for relief under section 1172.6, as a matter of law. Simply put, the record of conviction "do[es] not reflect all of the factual findings necessary to support a murder conviction under current law" and "establish conclusively that [Payne] is ineligible for relief." (*Curiel*, *supra*, 15 Cal.5th at p. 465.)

Because Payne's petition made a prima facie showing of entitlement to relief (see *Curiel*, *supra*, 15 Cal.5th at pp. 470–471; *Strong*, *supra*, 13 Cal.5th at p. 708; *Lewis*, *supra*, 11 Cal.5th at pp. 970–972; § 1172.6, subd. (c)), we will reverse the resentencing court's April 2022 order and remand the matter with directions to issue an order to show cause and hold further proceedings under section 1172.6.[21] We express no opinion on whether Payne's section 1172.6 petition should be granted or denied following further proceedings.

## III. DISPOSITION

The resentencing court's April 27, 2022 order is reversed, and the matter is remanded with directions to issue an order to show cause and conduct further proceedings in accordance with Penal Code section 1172.6.

---

[21] Having concluded that the resentencing court's order denying Payne's petition must be reversed, we need not address Payne's additional contentions that issue preclusion should not apply in this case, the resentencing court erred in relying on the Court of Appeal's opinion to find substantial evidence of intent to kill, and his appointed counsel provided constitutionally ineffective assistance before the resentencing court.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Bromberg, J.




**H050013**
*People v. Payne*